UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT GATES, No. 00-B-1733

                    Petitioner,

                                                    05-CV-6337
                                                    **ORDER**

          V.

JAMES T. CONWAY, Superintendent
of Attica Correctional Facility,

                    Respondent.

_____

<u>**INTRODUCTION**</u>

        Petitioner Robert Gates ("Gates") has filed a *pro se* petition

seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For

the reasons set forth below, Gates' petition is denied.

<u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

        Following a jury trial in April 2000, Robert Gates was found

guilty in Niagara County Court on two counts of Burglary in the

Second Degree (N.Y. Penal Law § 140.25(2)); Petit Larceny (N.Y.

Penal Law § 155.25); and Criminal Possession of Stolen Property in

the Fifth Degree (N.Y. Penal Law § 165.40).  The conviction arises

from two incidents that occurred in 1996 in the City of Niagara

Falls, New York ("Niagara Falls").  At approximately 7:15 p.m. on

July 17, 1996, Howard Walck and his wife Shirley left their home at

2036 Saunders Settlement Road, Niagara Falls to go buy groceries

and eat out.  T. 328, 333, 336.[1]  They returned at approximately

9:30 p.m. and found police cars in their driveway and a window in

_____

        [1] Citations to "T.__" refer to the trial transcript.

their house open with the latch broken and screen torn. T. 336-38. Mr. Walck testified that the inside of his house was ransacked, and he was missing his wedding ring, watch, and a rifle magazine containing three cartridges. T. 339-47. Mary and Frank Bruns, neighbors across the road from Mr. Walck, testified that around 8:50 p.m. that night, they saw a car in the Walck's driveway. T. 355, 358-59. Mr. Bruns went across the street to the Walck's house to write down the licence plate number because he knew the Walck's were not home. T. 359-60. Shortly after Mr. Bruns wrote down the number, a man wearing a white tee shirt, jeans, and dark hair came from around the side of the Walck's house, spoke to Mr. Bruns, and got into the car and sped away. T. 363-70, 380-82. As the car was pulling out of the driveway, a second man ran out from behind the house and across a field and jumped into the car which then drove away. T. 364-68, 382-86. Mr. and Mrs. Bruns described the second man as having dirty blond hair and wearing a red tank top and blue jean shorts. T. 364-71, 376, 383-86.

That same evening, another break-in occurred in Niagara Falls. According to William Morog, shortly after 10:50 p.m., he and his wife saw people moving around his neighbors' house, belonging to Mr. and Mrs. Kostuk, at 4835 Penn Street. T. 288-89. Mrs. Morog knew the Kostuk's were not home and called the police. T. 289-90. Mr. Morog saw a man with no shirt on and a bag across his shoulder run across the lawn to a parked car. 290-92. A man with a white shirt got out of the car and greeted the man without a shirt on, and they drove off. T. 292-97. At approximately 10:45, the police

took Mr. Morog to a Kentucky Fried Chicken restaurant where he identified a car as being the same one he saw earlier parked near the Kostuk's residence.  T. 298-99.

Niagara Falls Police Officer Jay Fisher testified at trial that he heard a broadcast on his radio regarding a possible burglary involving the vehicle identified by Mr. Bruns.  T. 405-06. Officer Fisher then saw a car drive past him fitting the description of the car seen by Mr. Bruns.  Id.  The vehicle's licence plate also matched the description broadcast by the police dispatcher.  Id.  Officer Fisher followed the car as it pulled into a Kentucky Fried Chicken restaurant and stopped.  T.408-09.  When Officer Fisher exited his vehicle, two men got out of the car and ran.  T. 408-10.  Both men were caught and apprehended by the police.  T. 414-418.  At trial Officer Fisher identified petitioner Robert Gates as the shirtless driver of the car.  T. 415.  The other man was identified as William Lobianco.[2]  The police found property from both the Walck and Kostuk residences on Gates' person as well as in the car, which was identified as a 1980 Chevrolet Caprice.  T. 248-50.

Lobianco testified at trial that he burglarized the Walck and Kostuk residences with a man named Paul Anderson, who he met at a bar called the Player's Lounge.  T. 513-605.  Lobianco testified that during the time between the two burglaries he returned to the

---

[2] Lobianco pled guilty to two counts of Burglary with respect to the robberies at 2036 Saunders Settlement Road and 4835 Penn Street.  He was sentenced to a term of nine years imprisonment.  T. 513-15.

Player's Lounge and called Gates to set up a meeting, and after the Kostuk burglary he dropped off Anderson and picked up Gates. T. 526-30. He testified that he gave Gates a watch, ring and some credit cards from the burglaries because he owned him money. T. 532-533. Lobianco testified that after he and Gates pulled into the Kentucky Fried Chicken restaurant, a police car turned on its lights behind them, and he exited the vehicle and attempted to run away. T. 530-33.

At trial, Petitioner's defense counsel made a motion to dismiss the charges alleged in the indictment for failure of the People to meet their burden of proof. T. 607-08. The court denied that motion, and on April 19, 2000, the jury returned a verdict of guilty on both counts of burglary, as well as petit larceny and criminal possession of stolen property in the fifth degree. T. 819. On June 5, 2000, the court scheduled a hearing to determine whether Gates qualified as a second violent felony offender. See County Court Appearance on June 5, 2000 Transcript at 2-3. Though still represented by counsel, Gates filed two *pro se* Motions to Set Aside the Verdict pursuant to § 330.30 of the New York Criminal Procedure Law. Gates also filed a *pro se* Motion to Dismiss the Indictment. The District Attorney's office filed an Affirmation in Opposition to Defendant's Motion to Set Aside the Verdict and Gates filed a Reply to the People's Affirmation.

At the sentencing hearing on July 3, 2000, the court denied Gates's 330.30 motions and determined that he had previously been convicted in Erie Country on June 29, 1987 of Attempted Robbery in

the First Degree.  The court sentenced Gates to fifteen years in state prison on each burglary conviction, each sentence to run concurrently.

Gates filed a notice of appeal on December 5, 2000.  While his direct appeal was pending, Gates collaterally attacked his conviction in state court.  On March 15, 2002, Gates filed a motion pursuant to C.P.L § 440.10 seeking to vacate his conviction, alleging <u>Brady</u> and <u>Rosario</u> violations stemming from his belief that the prosecutor had a recording of an emergency call made to 911 that was relevant to the charges.[3]  His motion was denied on April 24, 2003, after an evidentiary hearing.  <u>See</u> Apr. 24, 2003 Decision of County Court on Petitioner's 440.10 Motion, attached as Exhibit D to Petition for Writ of Habeas Corpus (hereinafter Court's Decision on Pet. 440.10 Motion, Ex. D).  The Niagara County Court held that the People denied ever having possession of a 911 tape relevant to the charges, that Gates did not present proof supporting his claims, and that although Gates had knowledge of the alleged 911 call at trial, he never requested production of any recording of the call.  <u>Id.</u>

On February 26, 2003, Gates filed a motion pursuant to C.P.L § 440.10(1)(f) and (h) alleging ineffective assistance of

---

[3] <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961) (holding that in New York a prosecutor is obliged to turn over any written or recorded pre-trial statements of the People's witnesses which relate to the witnesses' trial testimony).

counsel.  This motion was denied on August 28, 2003.  See Aug. 28, 2003 Decision of County Court on Petitioner's 440.10(1)(f) and (h) Motion, attached as Exhibit E to Petition for Writ of Habeas Corpus (hereinafter Court's Decision on Pet. 440.10(1)(f) and (h) Motion, Ex. E).

On April 30, 2004, the Supreme Court of the State of New York Appellate Division, Fourth Department ("Appellate Division") unanimously affirmed the Niagara County Court's decision, finding that there was "overwhelming proof of [Gates'] guilt," that Gates had received effective assistance of counsel, and that the sentence was not "unduly harsh or severe."  Gates requested permission from the New York State Court of Appeals, pursuant to C.P.L. § 460.20, to appeal the order of the Appellate Division.  The Court of Appeals denied leave to appeal on July 14, 2004.

On June 24, 2005, Gates filed the instant federal habeas corpus petition pursuant to 28 U.S.C. § 2254, claiming that: (1) the trial court improperly instructed the jury regarding inferences that may be drawn from the recent and exclusive possession of stolen property; (2) he received ineffective assistance of trial counsel; (3) the prosecutor engaged in misconduct during voir dire, opening statements, cross-examination, and closing arguments; (4) the trial court erred by allowing Officer Rizzo to testify regarding statements allegedly made by the Petitioner regarding his hair color; (5) the prosecutor withheld and failed to disclose exculpatory material to the defense, violating Brady and Rosario; and (6) there was insufficient

evidence as a matter of law to establish guilt of the Petitioner. (Docket No. 1; No. 9). Respondent answered the petition, asserting that none of Gates' claims have merit, and that the "New York State courts correctly decided the facts and law when they upheld the Petitioner's judgment of conviction on direct appeal and collateral attack." Resp't Answer at 2 (Docket No. 4).

For the reasons set forth below, the petition is denied.

## DISCUSSION

### I. Standard of Review

Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a prisoner in state custody on a claim that was adjudicated on the merits in state court only if it concludes that the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); see also Williams v. Taylor, 529 U.S. 362, 375-76 (2000); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).

The federal habeas statute provides that courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only

on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This means that "[a] federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of *federal* law." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (emphasis supplied) (citing 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Furthermore, the AEDPA also requires that in any such proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct [and] the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Boyette, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotation marks omitted). The Second Circuit has provided additional guidance concerning a federal court's application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

Williams v. Artuz, 237 F.3d 147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## II.  Exhaustion Requirement

The writ of habeas corpus requires that the petitioner must have "fairly presented" his claims to the state courts before a federal court can issue the writ.  See Jimenez v. Walker, 458 F. 3d 130, 148-49 (2d Cir. 2006); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991) (noting the exhaustion requirement, codified at 28 U.S.C. § 2254(b)(1), is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights.").  Although a federal court may not grant a writ of habeas corpus on a claim that has not be exhausted, the court does have the discretion to deny such a petition.  See 28 U.S.C. § 2254(b)(2).

"In developing and refining the 'fairly present[ed]' standard, the Supreme Court concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts."  Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005).  Gates previously raised on direct appeal and in collateral motions the same or substantially similar claims as raised in this petition.  His motion for leave to appeal to the New York State Court of Appeals was denied.  Respondent concedes that Gates has properly exhausted all of the claims raised in the present habeas petition.  Resp't Answer at 6 (Docket No. 5).  Accordingly, this Court finds that Gates has exhausted his available state court remedies.

### III. Non-cognizable Claims

Gates' petition for habeas relief alleges several claims that are not cognizable in federal court. As stated above, federal habeas relief does not lie for state law errors. See Estelle, 502 U.S. at 68. Rather, for a claim to be cognizable, the claim must present a federal question. See Dunnigan, 137 F.3d at 125.

Gates argues that it was error for the trial court to allow Officer Rizzo to testify about Gates' response to a question concerning his hair color during the booking process because such statement was not provided in a C.P.L. § 710.30 notice. This claim is not cognizable under federal habeas analysis because it alleges a violation of state law only. See Campbell v. Poole, 555 F.Supp. 2d 345, 373 (W.D.N.Y. 2008) ("[t]hus, to the extent that [petitioner] is claiming an error of New York state evidentiary law, such a claim is not cognizable on habeas review."); see also McCullough v. Filion, 378 F.Supp. 2d 241, 261 (W.D.N.Y. 2005) ("courts in this Circuit have held that an alleged violation of N.Y. Crim. Proc. Law § 710.30 is not cognizable on habeas review."); Rosa v. McCray, 396 F.3d 210, 222 (2d Cir. 2005) (finding no constitutional violation occurred when police, during booking proceeding, asked defendant what his hair color was.). Because Gates has not raised a claim alleging a violation of federal law, I deny this claim.

Moreover, to the extent Gates' claim alleges a Rosario violation, a "[p]etitioner's claims that the prosecutor committed a Rosario violation by not turning over [evidence] does not form a

basis for federal habeas relief because these claims derive from state law." <u>McBean v. Warden</u>, Slip Copy, 2008 WL 5169549, *23 (N.D.N.Y. 2008); <u>see</u> <u>also</u> <u>Goston v. Rivera</u>, 462 F.Supp. 2d 383, 394 (W.D.N.Y. 2006) ("[petitioner's] claim relating to the prosecutor's <u>Rosario</u> violation is not a federal constitutional claim cognizable on habeas review.") (citing <u>Lyon v. Senkowski</u>, 109 F.Supp. 2d 125, 139 (W.D.N.Y. 2000)). Gates' alleged <u>Rosario</u> violation claim is therefore likewise not cognizable. Accordingly, Petitioner's claims regarding Officer Rizzo's testimony and alleged <u>Rosario</u> violations are not cognizable under federal habeas review.

## IV. Procedural Default

Federal Courts will not review a "question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment... whether the state law ground is substantive or procedural." <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003). The bar on habeas review resulting from a procedural default applies even where the state court issues an alternative holding addressing a procedurally defaulted claim on the merits. <u>See</u>, <u>e.g.</u>, <u>Id.</u> at 264 n.10; <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990) (<u>per curiam</u>).

The Appellate Division held on Gates' direct appeal that he failed to preserve for review his claims that: (1) the trial court improperly charged the jury with respect to inferences that could be made from Gates' recent and exclusive possession of stolen property; and (2) the prosecutor engaged in misconduct during

opening statements, cross-examination of the defense witnesses, and summation.  In holding that these claims were not preserved for appellate review, the Appellate Division decided the claims based on state procedural rules independent of any federal question. With respect to Gates' claim of prosecutorial misconduct, the Appellate Division found that Gates' had failed to comply with the requirements of New York's "contemporaneous objection rule" described at N.Y.CRIM. PROC. LAW § 470.05(2), and thereby failed to properly preserve his claim for appellate review.  The Appellate Division also found Gates' contention that the trial court erred in its charge to the jury on recent and exclusive possession was likewise not preserved for review.  In so concluding, the Appellate Division relied on the independent state ground in <u>People v. Hoke</u>, 62 N.Y.2d 1022, 1023 (N.Y. 1984), holding that a failure of the defendant to specify why the charge as given was inadequate meant there was no preservation for appellate review of error in the charge as given because the charge was based upon judicial discretion.

A procedural bar is "adequate" for purposes of habeas review if it is based on a rule that is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).  New York's contemporaneous objection requirement (CPL § 470.05(2)) is firmly established and regularly followed, as shown by relevant case law. <u>See</u>, <u>e.g.</u>, <u>Reyes v. Keane</u>, 118 F.3d 136, 138 (2d Cir. 1997) ("A state prisoner who fails to object to a jury

instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review."). Likewise, finding a claim not preserved for review because petitioner failed to specify why a jury charge based on judicial discretion in error is an adequate procedural bar. See People v. Hoke, 62 N.Y.2d at 1023 n.* (noting that the requirement of specific objection to a jury charge "serves a salutary purpose" as defense trial counsel is in the best position to appropriately object and give the court the opportunity to correct any error). Therefore, this court finds the state law grounds relied on for both claims were independent of the federal question and adequate to support the decision of the state court. Accordingly, this Court may not review these claims.

A federal habeas petitioner may excuse the procedural default by showing cause for the default and prejudice, or that failure to consider the defaulted claim will result in a miscarriage of justice. Fama, 235 F.3d at 809. A fundamental miscarriage of justice occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). In the instant case, Gates has failed to meet the stringent requirements to show a miscarriage of justice regarding his claims of prosecutorial misconduct and the trial court's charge to the jury because Gates has not provided sufficient evidence to establish actual innocence or demonstrate that no reasonable juror could have convicted him. Gates also failed to show cause and prejudice sufficient to excuse the procedural default. "[T]he existence of cause for a procedural

default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 488. Petitioner Gates claims ineffective assistance of counsel at trial both separately as a ground for habeas relief as well as a contributing factor in other claims throughout his writ. While ineffective assistance of trial would constitute sufficient cause under this standard, "[n]ot just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." Id. As explained below, this Court finds that Gates did not receive ineffective assistance of counsel, and therefore, he can not show cause for the procedural default. Accordingly, I find Petitioner's claims of prosecutorial misconduct and trial court error with respect to the jury charge are procedurally defaulted, and therefore, those claims may not be reviewed by this court on habeas review.

### V.    Remaining Claims

Gates alleged in his petition for a writ of habeas corpus that he received ineffective assistance of trial counsel, that the prosecutor withheld and failed to disclose exculpatory material to the defense which violated Brady, and that there was insufficient evidence as a matter of law to support a conviction. These claims have been adjudicated on the merits by New York state courts, and therefore are analyzed using AEDPA's deferential standard of review. See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003).

Specifically, Gates' claim regarding alleged Brady violations was adjudicated on the merits pursuant to a collateral attack filed by Gates after his conviction.  The reviewing court held that because Gates "had knowledge of the 911 call at trial, even if it was not revealed in the course of "open file" discovery," no <u>Brady</u> violation occurred.  Court's Decision on Pet. 440.10 Motion, Ex. D.

With respect to Gates' claim of ineffective assistance of counsel, the Appellate Division ruled on direct appeal that Gates "received effective assistance of counsel." <u>People v. Gates</u>, 6 A.D.3d at 1063.  Finally, with respect to Gates' contentions that there was insufficient evidence as a matter of law to support a conviction, the Appellate Division held on direct appeal that the evidence presented at trial was more than sufficient to support a finding of guilt and that in fact, "[t]he proof of [Gates'] guilt is overwhelming." <u>Id.</u>  These statements demonstrate that the Appellate Division adjudicated Petitioner's claim of ineffective assistance of counsel and claim regarding the sufficiency of the evidence on the merits. <u>See, e.g.</u>, <u>Sellan</u>, 261 F.3d at 312 (finding an Appellate Division's one-word decision that petitioner's coram nobis petition was "denied" constituted an "adjudication on the merits" because there was "no basis for believing that the Appellate Division rejected the claim on non-substantive grounds.").  The state court's judgments on those claims are therefore entitled to deferential review. <u>See</u> <u>Id.</u> (finding when state court rejects a claim on the merits, the federal court will focus its review on whether the state court's

ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.") (internal citations omitted).

## A. Gates received effective assistance of counsel

Gates alleges that he was denied effective assistance of trial counsel. To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that: (1) his attorney's performance was deficient, and (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The standard is phrased in the conjunctive, so a habeas petitioner's failure to satisfy either prong requires that his ineffective assistance claim be rejected. Id. at 697. The burden on the petitioner is a heavy one because a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The court must "determine whether, in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance."
Id. at 690; accord, e.g., Pavel v. Hollins, 261 F.3d 210, 216
(2d Cir. 2001).

"Where... the claim of ineffective assistance is based on
counsel's failure to object to a defective jury charge, the second
part of the Strickland test requires a showing that the outcome of
petitioner's trial would likely have been different had an
appropriate objection been made." Bligen v. Burge, WL 5336693, *6
(S.D.N.Y. 2008) (citing Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir.
2004); Larrea v. Bennett, 368 F.3d 179, 183 (2d Cir. 2004)).  In
the alternative, the petitioner can establish prejudice by
demonstrating that, "had a timely objection been made and the trial
court not taken corrective action, there is a reasonable likelihood
that a state appellate court would have found the instruction to
contain non-harmless error." Id. (citing Bloomer v. United States,
162 F.3d at 193; Bouyea v. United States, 263 F.Supp. 2d 403, 411
(D.Conn. 2003).

Gates contends that he was deprived of effective assistance of
counsel based on numerous errors including his counsel's failure to
object to the trial court's jury charge on recent and exclusive
possession (which Gates' stated was "the most serious of [the]
trial errors," (Docket No. 1, at 14)), the failure to object at
other various times during the trial, counsel's failure to request
curative instructions regarding jurors viewing him in handcuffs,
and counsel's failure to call Petitioner to take the stand.  This
court will evaluate each of these contentions *seriatim*.

The failure of Gates' counsel to object to the trial court's jury charge did not constitute ineffective assistance of counsel. On direct appeal, the Appellate Division found that any objection to the allegedly erroneous jury charge had not been preserved, but further stated that any error in the charge was harmless and thus not prejudicial in light of the "overwhelming" evidence of Gates's guilt. People v. Gates, 6 A.D.3d 1062, 1063 (App. Div. 4th Dept. 2004) (citing People v. Crimmins, 36 N.Y.2d 230, 241-42 (N.Y. 1975) (holding that "constitutional error requires reversal and a new trial unless it was harmless under the test for harmless constitutional error laid down by the Supreme Court of the United States, namely, that there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt")). After examining the record, this Court finds that the trial court's jury charge was adequate, and therefore counsel did not unreasonably fail to object to the charge as given. The trial court's recent and exclusive possession charge adequately apprised the jury of the possible inferences that could be drawn from the facts that were introduced into evidence. The charge sufficiently explained the permissive nature of the inference in the context of the burglaries and petit larceny:

> such proof [of possession of stolen property] is a circumstance from which a jury may, but is not required to, draw an inference that such possession was guilty possession.... If the People fail to prove to your satisfaction beyond a reasonable doubt that the property found in defendant's possession by the defendant was exclusive,

recent, and unexplained... then you must not draw any guilty inference from the defendant's possession.

(T. 804-05).

Because the trial court's jury charge appropriately explained the law to be applied by the jury and because the proof of Gates' guilt was "overwhelming," I find Gates has failed to establish any reasonable likelihood that the outcome of the trial would have been different had trial counsel objected to the jury charge regarding possession. See Strickland, 466 U.S. at 696 (holding that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").

Gates also claims his trial counsel was deficient for failing to request curative instructions regarding jurors seeing him in handcuffs. The trial court found during Gates' 440.10 motion that Gates' attorney did not err by failing to request a curative instruction. The court found Gates' was only speculating that jurors saw him being led in handcuffs from a police car to the courthouse in April of 2000, but concluded that even if true, brief and inadvertent observations did not prejudice his right to a fair trial and curative instructions are not always required in such circumstances. Court's Decision on Pet. 440.10(1)(f) and (h) Motion, Ex. E. Counsel's decision not to request such an instruction and draw the attention of all jurors to these events does not establish ineffective assistance of counsel.

Lastly, Gates' claim that his counsel erred in advising him not to take the stand does not have merit, as Gates' criminal record supported a sound trial strategy that he not take the stand. See Smith v. Regan, 583 F.2d 72, 76 (2d Cir. 1978) (finding the decision to not have defendant with prior criminal record take the stand at trial was "sound trial strategy" as convictions could have been used to impeach defendant). Accordingly, Gates cannot satisfy the "prejudice" prong of Strickland. Therefore, petitioner Gates' claim of ineffective assistance of trial counsel is dismissed.

### B. The prosecution did not violate **Brady** or fail to disclose material to the defense

Gates contends that the prosecution deprived him of a fair trial under Brady v. Maryland, 373 U.S. 83 (1963) by failing to provide the defense with a recording of a 911 call regarding the burglary that occurred at 4835 Penn St., Niagara Falls.

In order to prevail on a claim of a Brady violation, Gates is required to establish that the undisclosed evidence would have been favorable to the accused; the state suppressed the evidence, either wilfully or inadvertently; and that he was prejudiced as a result of the failure to disclose. Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "Evidence is favorable to the accused if it either tends to show the accused is not guilty or impeaches a prosecution witness." Boyette v. LeFevre, 246 F.3d 76, 90 (2d Cir. 2001) (citing United States v. Bagley, 473 U.S. 667, 676 (1985)).

In this case, the trial court, following an evidentiary hearing, found that Gates never presented proof of his claim that

the prosecution had possession of a 911 tape relevant to the charges, and that Gates only speculated that a 911 tape might have been useful to him at trial. Court's Decision on Pet. 440.10 Motion, Ex. D. The court further found that Gates had knowledge of the 911 call at trial, but never requested production of any tape. Id. The Petitioner's pure speculation that a 911 tape would have been exculpatory does not demonstrate that the allegedly withheld evidence was favorable to his defense. Accordingly, there is no reasonable probability that the outcome of Gates' trial would have been different had the alleged existing 911 tape been provided to him. Therefore, Gates' claim based on the prosecution's alleged Brady violation is dismissed.

### C. The evidence presented at trial was sufficient to support a conviction as a matter of law

Gates claims in his petition for habeas relief that the evidence offered at trial was insufficient as a matter of law to establish his guilt beyond a reasonable doubt. The Appellate Division rejected his claim of insufficient evidence, and that adjudication was neither contrary to, nor an unreasonable determination of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1) and (2).

Gates alleges that the evidence at trial was insufficient as a matter of law to convict him, as it was "purely circumstantial." (Docket No. 1, at 46). He asserts that the descriptions of the perpetrators by witnesses were vague, inconsistent, and that he was

never identified as the person who committed the burglaries. (Docket No. 1, at 26-27).

When reviewing a claim that there was insufficient evidence to support a conviction, this Court, viewing the evidence in the light most favorable to the prosecution, must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998); Einaugler v. Supreme Court, 109 F.3d 836, 839 (2d Cir. 1997); Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994). In considering the sufficiency of the evidence with respect to a state law conviction, this Court "must look to state law to determine the elements of the crime," Fama, 235 F.3d at 811 (citation omitted); accord Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), and consider whether "there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law," Einaugler v. Supreme Court of State of New York, 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted). A habeas petitioner "challenging the sufficiency of the evidence bears a very heavy burden." Id. at 840. The evidence must be viewed in the light most favorable to the prosecution, and all permissible inferences must be construed in the state's favor. E.g., United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993). Lastly, a court on federal habeas review may not "disturb the jury's findings with respect to the witnesses' credibility." United State v. Roman, 870

F.2d 65, 71 (2d Cor. 1989). See, e.g., Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (a federal court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). Viewing the evidence in the light most favorable to the prosecution, a rational jury could reasonably have concluded that Gates was guilty of two counts of Burglary in the Second Degree and one count of Petit Larceny. A person is guilty of burglary in the second degree when he "knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when... the building is a dwelling." N.Y. Penal Law § 140.25(2). A person is "guilty of petit larceny when he steals property," N.Y. Penal Law § 155.25, and guilty of criminal possession of stolen property in the fifth degree when he "knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." N.Y. Penal Law § 165.40. At trial, the prosecution presented evidence that property was stolen from two dwellings, 2036 Saunders Settlement Rd. and 4835 Penn St., pursuant to break-ins. The prosecution further presented eyewitness evidence that one of the individuals seen leaving the houses following the break-ins met Gates' physical description. Additional evidence established that Gates was arrested fleeing from a car eyewitnesses identified as involved with the burglaries. Stolen goods were discovered in the car and on Gates' person soon

after the second burglary occurred.  Based on this evidence, a reasonable trier of fact could have concluded that Gates was guilty beyond a reasonable doubt of Burglary in the Second Degree, Petit Larceny, and Criminal Possession of Stolen Property.  Gates' claim is therefore dismissed.

## CONCLUSION

For the reasons stated above, Robert Gates' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety, and the petition is dismissed.  Further, because Gates has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability.  See 28 U.S.C. § 2253.

**ALL OF THE ABOVE IS SO ORDERED**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 22, 2009